**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANGELA CLAYTON,

       Plaintiff,

v.                                CASE NO. 2:15-cv-12249

COMMISSIONER OF SOCIAL          HON. MARIANNE O. BATTANI
SECURITY,

       Defendant.

_____/

**OPINION AND ORDER SUSTAINING THE DEFENDANT'S OBJECTIONS,
ADOPTING IN PART THE REPORT AND RECOMMENDATION, GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

## I.    INTRODUCTION

Before the Court are Defendant Commissioner of Social Security's objections to

the Magistrate Judge's Report & Recommendation ("R&R").  (Doc. 16).  Magistrate

Judge Patricia T. Morris considered the parties' cross motions for summary judgment

and, on May 20, 2016, entered an R&R.  (Doc. 15).  In the R&R, Magistrate Judge

Morris recommended that the Court grant Plaintiff Angela Clayton's motion for summary

judgment, deny the Commissioner's motion for summary judgment, and remand the

case for further administrative proceedings.  The basis for Magistrate Judge Morris'

recommendation was that the Administrative Law Judge failed adequately to consider

the res judicata effects of a prior decision, in compliance with <u>Drummond v. Comm'r of

Soc. Sec.</u>, 126 F.3d 837 (6th Cir. 1997), and Acquiescence Ruling 98-4(6).  For the

reasons that follow, the Court **SUSTAINS** the Commissioner's objections, **ADOPTS IN

PART** the R&R, **GRANTS** the Commissioner's Motion for Summary Judgment (Doc.

13), and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 11).

## II.    STATEMENT OF FACTS

As the parties have not objected to the R&R's procedural history, the Court

adopts that portion of the R&R.  (See Doc. 15, pp. 1-5).  With respect to the factual

evidence set forth in the record, a discussion of those records will occur below.

## III.    STANDARD OF REVIEW

### A.  Objections to a Magistrate Judge's R&R

A district court must conduct a *de novo* review of the portions of a magistrate

judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1).

The district "court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate" judge.  Id.  The requirement of *de novo*

review "is a statutory recognition that Article III of the United States Constitution

mandates that the judicial power of the United States be vested in judges with life

tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).  Accordingly,

Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the

final arbiter" of a matter referred to a magistrate.  Flournoy v. Marshall, 842 F.2d 875,

878 (6th Cir. 1987).

The Sixth Circuit has made clear that "[o]verly general objections do not satisfy the

objection requirement."  Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006).  Only

specific objections are entitled to *de novo* review; vague and conclusory objections

amount to a complete failure to object as they are not sufficient to pinpoint those

portions of the R&R that are legitimately in contention.  Mira v. Marshall, 806 F.2d 636,

637 (6th Cir.1986) (per curiam).  "The objections must be clear enough to enable the

district court to discern those issues that are dispositive and contentious."  Miller v.

2

Currie, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general."  Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

### B.  Standard of Review Applicable to Social Security Cases

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992).  There is no requirement, however, that either the Commissioner or this Court discuss every piece of evidence in the administrative record.  Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

3

**IV. DISCUSSION**

**A.  Res Judicata**

The R&R aptly examines the application of res judicata to a Social Security disability claim involving a prior disability determination made by an Administrative Law Judge ("ALJ").  In the interest of clarity, however, a brief summary is warranted.  In the Sixth Circuit, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  Drummond, 126 F.3d at 842.  That is, an ALJ confronting a subsequent disability claim with an unadjudicated period "must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence  relating to such a finding . . . ."  Acquiescence Ruling 98-4(6), 1998 SSR LEXIS 5, at *9.  Therefore, in order for an ALJ to make findings that differ from a previous decision, a claimant must provide new and material evidence demonstrating changed circumstances, such as the worsening of a condition.  See Priest v. Soc. Sec. Admin., 3 F. App'x 275, 276 (6th Cir. 2001) (finding that in order to be awarded benefits for her condition since the previous denial, the claimant "must demonstrate that her condition has so worsened in comparison to her condition in September 1994 that she was unable to perform substantial gainful activity"); Drummond, 126 F.3d at 843.  If a claimant cannot establish that his or her condition has deteriorated but rather seeks to challenge the previous ALJ's conclusions, that claimant must instead reopen the case if certain conditions can be met.  See 20 C.F.R. §§ 404.987, 404.992, 416.1487, 416.1492.

Here, the Magistrate Judge *sua sponte* raised the issue of res judicata and determined that the ALJ's failure sufficiently to analyze Plaintiff's claim under the standard set forth by Drummond precluded meaningful review.  Specifically, the R&R states that it is not clear whether the ALJ concluded that res judicata barred consideration of the second application; that new and material evidence of a change in circumstances existed, thereby permitting review on the merits; or that the case should be constructively reopened.  The Court need not address the propriety of the Magistrate Judge raising this matter *sua sponte* because it concludes that Drummond does not compel remand in this case.

At the outset, the ALJ's decision acknowledges the previous disability determination dated November 20, 2009, stating, "The undersigned does not find a basis for reopening the claimant's prior Title II application or Title XVI application . . . ." (Tr. 12).  The decision later recognizes Drummond and Acquiescence Ruling 98-4(6) and concludes:

> The prior finding concerning the claimant's residual functional capacity is binding absent evidence of an improvement or change in condition since the prior hearing . . . .
>
> The undersigned finds that the evidence of record shows that there has been a change in the claimant's condition since the prior decision and that the substantial evidence of record supports the aforementioned residual functional capacity.

(Tr. 18).

Contrary to the recommendation advanced by the Magistrate Judge, the ALJ's decision clearly and expressly states that it does not purport to reopen the case and that the evidence of record demonstrated a change in circumstances justifying a deviation from the November 2009 decision.  Though the ALJ did not compare and contrast the

5

records from the previous and current claims, there is no obligation to do so.  See Erb v. Colvin, No. 4:13-cv-14798, 2015 U.S. Dist. LEXIS 20595, at *58 (E.D. Mich. Jan. 29, 2015) (relying on Collier v. Comm'r of Soc. Sec., 108 F. App'x 358, 362-63 (6th Cir. 2004)) ("[T]he regulations do not instruct ALJs facing *res judicata* to examine specific medical evidence from the prior case file.  Additionally, the Sixth Circuit has rejected claims that the ALJ must do so."), *adopted by* 2015 U.S. Dist. LEXIS 19647 (E.D. Mich. Feb. 19, 2015).  It is evident from the ALJ's decision that he thoroughly examined the record evidence relating to the unadjudicated period in arriving at his conclusion that Plaintiff's condition worsened since the previous decision was rendered.  In reviewing the record, the Court finds that this conclusion is supported.  In a similar case, this District found that where an ALJ's decision specifically acknowledged, "The evidence of record supplied after the prior decision confirms the claimant is now limited to less than a full range of sedentary work," and proceeded to discuss that evidence, Drummond did not compel remand.  See Jackson v. Comm'r of Soc. Sec., No. 2:15-cv-11161, 2016 U.S. Dist. LEXIS 44563, at *37-38 (E.D. Mich. Feb. 11, 2016), *adopted by* 2016 U.S. Dist. LEXIS 43182 (E.D. Mich. March 31, 2016).  Accordingly, the Court determines that the ALJ's acknowledgement of Drummond and conclusion that new and material evidence demonstrated a change in circumstances satisfied the requirements of res judicata.

Even if a violation of res judicata and Drummond had occurred, the instant case would not merit remand.  Whereas the ALJ decision rendered in November 2009 opined that the Plaintiff would be restricted to work at the light exertional level with various postural and environmental limitations, the present decision includes additional

6

limitations, such as a sit/stand option.  Case law supports the objection advanced by the Commissioner that where a latter residual functional capacity ("RFC") is more restrictive than the prior RFC, a Plaintiff is unable to demonstrate the prejudice or harm necessary to achieve a remand.  See, e.g., Jackson, 2016 U.S. Dist. LEXIS 44563, at *36 ("The Court should conclude, as the Commissioner argues, that *Drummond* does not require remand in this case . . . . Thus, the latter RFC determination was more restrictive."); Siegrist v. Comm'r of Soc. Sec., No. 14-14436, 2016 U.S Dist. LEXIS 28594, at *9 (E.D. Mich. Feb. 17, 2016) (finding that where a subsequent RFC is more restrictive than a previous RFC, the "plaintiff has not shown any harm in the ALJ's deviation from the previous RFC finding"), *adopted by* 2016 U.S. Dist. LEXIS 27677 (E.D. Mich. March 4, 2016); Kepke v. Comm'r of Soc. Sec., No. 13-CV-13944, 2014 U.S. Dist. LEXIS 181087, at *42 (E.D. Mich. Sept. 17, 2014) (citing Castrovinci v. Astrue, No. 1:10CV2650, 2012 U.S. Dist. LEXIS 36282, at *19 (N.D. Ohio March 19, 2012)) ("[T]his case is differentiated from *Drummond* in that the ALJ ultimately found Plaintiff more restricted in terms of the current RFC than the prior decision"), *adopted by* 2015 U.S. Dist. LEXIS 7718 (E.D. Mich. Jan. 23, 2015), *aff'd at* 636 F. App'x 625 (6th Cir. 2016). This reasoning provides alternate grounds supporting the Court's opinion that remand is not appropriate.

### B. Parties' Motions for Summary Judgment

#### a. Residual Functional Capacity

Because the R&R did not confront the parties' arguments supporting their respective motions for summary judgment, the Court must do so now.  Plaintiff first

maintains that the RFC is unsupported by the evidence of record.  According to Plaintiff, the ALJ "cherry picked" the record, mischaracterizing some evidence while completely ignoring other evidence supporting a finding of disability.  In the opinion, the ALJ found severe impairments of degenerative disc disease of the cervical and lumbar spines, degenerative joint disease of the right hip, rheumatoid arthritis, and chronic obstructive pulmonary disease ("COPD").  (Tr. 15).  The ALJ next determined that Plaintiff retained the capacity to perform work consistent with the following RFC:

> [L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently.  The claimant can stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks.  The claimant requires the opportunity to sit or stand alternatively, provided the individual is not off-task more than 10% of the work period. The claimant can occasionally perform pushing and pulling. The claimant can occasionally operate foot controls. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant can frequently perform bilateral handling and fingering. The claimant must avoid all exposure to excessive vibration, use of hazardous, moving machinery, and exposure to unprotected heights. The claimant must avoid even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases.

(Tr. 17).

In support of the RFC, the ALJ cited to and examined a host of objective and opinion evidence.  (Tr. 19-22). X-rays of the lumbar and cervical spines taken in April 2012 demonstrate "[m]ild degenerative change of the lower lumbar spine and mild dextroscoliosis," and "[m]ild degenerative change predominantly at C5-C6, C6-C7 level."  (Tr. 297, 299).  An MRI of the pelvis performed on June 5, 2012, shows mild degenerative change in the bilateral sacroiliac joint, mild osteoarthritis in the right hip, and moderate facet arthropathy in the lower lumbar spine.  (Tr. 278).  An MRI of the lumbar spine performed on the same date contains more detailed findings.  This MRI demonstrates mild to moderate degenerative changes, including L3-L4 and L4-L5 mild central canal stenosis, moderate left and mild right facet degeneration and foraminal

narrowing, and moderate circumferential disc bulging. (Tr. 280). An EMG study of the lower extremities performed on July 10, 2012, returned normal results and was negative for myopathy and radiculopathies. (Tr. 374).

Plaintiff underwent a consultative examination by Asit K. Ray, M.D., on August 27, 2012. (Tr. 280). During the examination, Plaintiff reported that she was independent in self-care and activities of daily living, including driving. (Id.) Dr. Ray observed that she ambulated normally without a limp and without the use of an assistive device such as a cane or walker. She was able to heel and toe walk and had no difficulty getting on or off the examination table. (Tr. 307-08). The ranges of motion observed were mildly reduced in the cervical spine, lumbar spine, and bilateral knees but otherwise normal. (Tr. 313). There was no evidence of muscle spasm or soft tissue tenderness in the lumbar spine. (Tr. 308). Dr. Ray noted no evidence of synovial thickening in Plaintiff's elbows or wrists but did note Heberden's nodes in her index and middle fingers bilaterally and very slight synovial thickening in the right index joint. (Tr. 307-08). Nonetheless, Plaintiff was able to make a fist in both hands, had grip strength of 30 pounds in her right hand and 20 pounds in her left, with intact pinch grip such that she was able to pick up a coin and open a jar. (Tr. 308). Based on this physical examination and his review of the imaging records, Dr. Ray determined that Plaintiff suffered from rheumatoid arthritis, had a history of COPD, and was status post bilateral carpal tunnel surgery. He opined that Plaintiff "would be able to perform her usual and customary activities including her occupational duties without any restrictions." (Tr. 309). The ALJ afforded Dr. Ray's opinion some weight, explaining that although Dr. Ray's opinion was supported by the lack of objective findings on clinical examination, "more recent medical evidence of record establishes that the claimant's degenerative disc disease and degenerative joint disease has progressed . . . ." (Tr. 21).

State agency examiners reviewed Plaintiff's records in August and September of 2012. Quan Nguyen, M.D., concluded that Plaintiff would be capable of performing light work, namely occasional lifting and carrying of 20 pounds, frequent lifting or carrying of

10 pounds, standing or walking for 6 hours of an 8-hour workday, and sitting for 6 hours of an 8-hour workday. (Tr. 132). Dr. Nguyen further restricted Plaintiff to unlimited pushing and pulling (other than restricted for lifting and carrying); frequent climbing of ramps and stairs; never climbing ladders, ropes or scaffolds frequent balancing, kneeling, and crouching; occasional stooping and crawling; and avoidance of concentrated exposure to pulmonary irritants. (Tr. 133). Meanwhile, Blaine Pinaire, Ph.D., opined that Plaintiff had no severe psychological impairments. (Tr. 120). The ALJ afforded these opinions great weight, as they were consistent with the medical evidence of record. (Tr. 15, 21).

In justifying the RFC, the ALJ reasoned as follows:

> Diagnostic testing indicates that the claimant's degenerative disc disease and degenerative joint disease are only of mild to moderate severity. Surgical intervention has not been recommended even though the claimant saw little relief from conservative treatment with injections or physical therapy. Despite her complaints of significant pain and swelling from rheumatoid arthritis, the longitudinal treatment record does not reflect that the claimant sought specialized treatment from a rheumatologist. Although the claimant has a history of chronic obstructive pulmonary disease, she testified that she experiences shortness of breath quite infrequently, only once every few months, and that she is not currently prescribed any inhalers or nebulizers for treatment. The claimant testified to essentially normal activities of daily living, including providing care and comfort for her 5-year-old son . . . . The undersigned finds that there is no reasonable indication in the available medical evidence of record that additional or more restrictive limitations would be warranted in the aforementioned residual functional capacity assessment.

(Tr. 22). This explanation is well supported by the substantial evidence summarized above. Though there is contrary evidence in the record that may justify a different outcome, as will be discussed below, the Court must uphold the ALJ's conclusions where the decision is supported by substantial evidence. See Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990) (citing Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)) ("Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.").

Plaintiff contends that the ALJ misstated or ignored some of the findings of the various diagnostic tests. Specifically, Plaintiff avers that the ALJ failed to discuss certain cervical and thoracic MRIs, as well as an EMG study positive for lumbar

10

radiculopathy.  Additionally, Plaintiff claims that the ALJ selectively quoted portions of the lumbar MRI.  The thoracic and cervical MRI studies were performed in June 2009, three years prior to the alleged onset date of July 3, 2012, while the EMG study was performed on November 8, 2002, ten years before the alleged onset date.  (Tr. 478-79, 499).  Rather than discuss these older studies, the ALJ reasonably focused on more recent tests and imaging that demonstrated different findings.  See, e.g., Spicer v. Comm'r of Soc. Sec., No. 15-CV-11037, 2016 U.S. Dist. LEXIS 74511, at *19 (E.D. Mich. June 8, 2016) (finding the ALJ's decision to accord greater weight to a more recent medical opinion to be reasonable).  Furthermore, this older evidence was part of the record from Plaintiff's previous application, which the ALJ should not reweigh on the merits unless the former claim is being reopened.  See Tobak v. Apfel, 195 F.3d 183, 186 (3d Cir. 1999) ("[A] reopening will be found when there is an administrative review of the entire record and a decision is reached on the merits of the claim.").  With respect to the lumbar MRI, the Court finds that the ALJ's summary of the findings is accurate. (See Tr. 19).  The decision acknowledges that the MRI demonstrates degenerative diseases of mild to moderate severity.  (Tr. 22).  Finally, the language used in the June 5, 2012, MRI of the pelvis describing "multilevel foraminal narrowing, worst bilaterally at L4-L5 and on the left at L3-L4," does not suggest that this degenerative change is severe or extreme.  (See Tr. 279).  The use of the word "worst" is simply a comparative term to indicate the spinal areas of greater relative progression.

Next, Plaintiff contends that the ALJ ignored every reference to lumbar radiculopathy and radiculitis in the record, particularly in the medical records from treating physicians Rama D. Rao, M.D., and Kavitha Reddy, M.D.  Drs. Rao and Reddy are both specialists in pain medicine.  According to Dr. Rao, Plaintiff presented On September 20, 2010, with chronic back, neck, and shoulder pain.  (Tr. 405).  On examination, Dr. Rao noted good motor strength and normal sensation to pinprick and touch in the upper and lower extremities.  (Tr. 405-06).  Dr. Rao also noted decreased flexion and extension in the lumbar spine and tenderness over the facet joints.  (Tr.

406).  Her assessment included persistent severe neck pain with radicular pain, cervical

and lumbar degenerative disc disease, myofascial pain, suprascapular nerve neuralgia,

and bilateral sacroiliitis with L5 radicular pain.  (Id.)  She recommended treatment with

steroid injections.  (Id.)  When Plaintiff returned to Dr. Rao on March 7, 2011,

complaining of recurrent and severe low back pain and radicular pain to the left hip and

leg, the examination and recommendation were the same.  (Tr. 403-04).

In February 2013, Plaintiff began treatment with Dr. Reddy.  As described in the

ALJ's decision, Plaintiff presented with low back pain that very occasionally radiated into

her left medial thigh but without numbness, tingling, or weakness in her lower

extremities.  (Tr. 328).  On examination Dr. Reddy observed that Plaintiff's gait was

normal, she was able to heel and toe walk but was tender to palpation of lower lumbar

spinal region.  (Tr. 329).  While Plaintiff's lumbar flexion and extension was limited,

straight leg raise and Patrick's maneuver were both negative, and her hip range of

motion was full.  (Id.)  Dr. Reddy diagnosed chronic low back pain, lumbar spondylosis,

lumbar facet arthritis, bilateral sacroiliac pain/dysfunction, and medial leg pain indicative

of bilateral L3 radiculitis.  (Tr. 322, 329)  She prescribed 800mg of Motrin twice daily

with Tramadol when necessary, steroid injection, and physical therapy.  (Tr. 329-30).  At

a follow up appointment on March 21, 2013, Dr. Reddy's impressions and treatment

were the same, though physical therapy was discontinued.  (Tr. 321-23).

In the decision, the ALJ discussed the treatment records from Dr. Reddy but not

from Dr. Rao.  (Tr. 19).  However, their observations and recommendations are largely

the same, and Dr. Reddy's records are more recent.  Indeed, Plaintiff treated with Dr.

Rao over a year prior to the alleged onset date.  Although the ALJ's decision does not

specifically reference Dr. Reddy's assessment of radiculitis, it does acknowledge that

Plaintiff presented with the complaint that "[h]er pain radiated to her left medial thigh up

to her knee."  (Id.)  It is evident that the ALJ fully considered Dr. Reddy's treatment

report, given the thorough summary.  Further, an EMG study performed on July 10,

2012, was negative for myopathy and radiculopathy (Tr. 374), and consultative

12

examiner Dr. Ray opined that, "[c]linically, there is no evidence of cervical or lumbar radiculopathy" (Tr. 309). Drs. Rao and Reddy appear to have based their assessments of radiculopathy on Plaintiff's subjective complaints of pain. Lastly, neither Dr. Rao nor Dr. Reddy advanced an opinion suggesting the extent of Plaintiff's functional limitations, let alone greater limitations than those accounted for in the RFC. See Creech v. Comm'r of Soc. Sec., 581 F. App'x 519, 521 (6th Cir. 2014) (noting that a plaintiff must demonstrate prejudice flowing from a failure to follow procedures); Houston v. Comm'r of Soc. Sec., No. 14-14426, 2015 U.S. Dist. LEXIS 133960, at *52-53 (E.D. Mich. Aug. 25, 2015) (finding harmless error where a treating source "advanced no opinion that translates into meaningful functional limitations," because "the ALJ did not undercut any medical opinion that, if adopted, would qualify Plaintiff for benefits."), *adopted by* 2015 U.S. Dist. LEXIS 131952 (E.D. Mich. Sept. 30, 2015). Therefore, the fact that the ALJ did not specifically reference findings of radiculopathy does not warrant remand.

Next, Plaintiff challenges the ALJ's assessment of her credibility. Plaintiff takes issue with the ALJ's description of her activities of daily living ("ADLs"), namely "providing care and comfort for her 5-year-old son." (Tr. 22). Plaintiff highlights her testimony that she receives significant assistance from her sisters and adult son in household chores and in raising her child. (Tr. 73-75). The ALJ reasoned, "It appears that the claimant's reliance on her older sons and her sister and brother-in-law mainly stems from the constant presence of these family members and their willingness to cater to the claimant's requests." (Tr. 22). Plaintiff objects to the ALJ's suggestion that Plaintiff "is simply manipulating her relatives." Even if the ALJ's characterization of Plaintiff's familial relationships was not artfully worded, the record nonetheless demonstrates that Plaintiff is independent in her ADLs. Plaintiff reported to Dr. Ray that she was independent in self-care. (Tr. 306). She reported to Dr. Dickson both that she cares for her son and attempts to give him "all her attention" and that "my sister helps me with chores, but I do it for the most part." (Tr. 317). Finally, she reported to Dr. Reddy that she was independent with "most of her ADLS." (Tr. 321, 328). "[A]n ALJ is

13

not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). Indeed, Social Security Rulings provide that the ALJ is to evaluate a claimant's statements in light of the objective medical evidence and other evidence. Social Security Ruling 16-3p (2016). These credibility determinations are accorded great deference. Daniels v. Comm'r of Soc. Sec., 152 F. App'x 485, 488 (6th Cir. 2005). In light of the ALJ's stated reasoning and the evidence of record, the Court finds that the ALJ's credibility conclusions related to Plaintiff's testimony were reasonable and supported by substantial evidence.

### b. Treating Source Opinion of Dr. Eugene Chardoul

Plaintiff's motion advances several arguments relating to the opinion of her primary care physician, Eugene Chardoul, M.D. According to Plaintiff, the ALJ misstated some of Dr. Chardoul's findings, failed to take into adequate consideration Plaintiff's pain and symptoms related to her rheumatoid arthritis, and failed to afford the appropriate weight to Dr. Chardoul's opinion regarding her functional limitations. On January 22, 2014, Dr. Chardoul provided deposition testimony setting forth his assessment of Plaintiff's impairments and resulting functional limitations. (See Tr. 417). Dr. Chardoul stated that due to her profound fatigue, Plaintiff would be unable to perform sustained activity for any period of time. (Tr. 423). She would not be able to lift, would not be capable of standing for more than a half hour, and is unable to sit for prolonged periods. (Id.) Due to her "crippling" rheumatoid arthritis and cervical spine degeneration, Plaintiff is virtually immobilized in her hands in terms of handling objects, reaching, pulling, and pushing. (Tr. 424). Dr. Chardoul did not believe Plaintiff would be capable of handling a job for eight hours a day and felt that she would be absent "quite a bit." (Id.)

Plaintiff's first argument notes that the decision erroneously states that Dr. Chardoul opined that, "[i]n regards to work restrictions, the claimant would not have any lifting limitations." (Tr. 20). A review of Dr. Chardoul's opinion establishes that he

14

stated that Plaintiff would be capable of lifting "practically none." (Tr. 423). The Court agrees with the Commissioner's explanation that this error is nothing more than a typographical error and that in rendering his decision, the ALJ thoroughly understood and evaluated Dr. Chardoul's opinion. The decision otherwise accurately summarizes the serious and significant functional limitations described by Dr. Chardoul, including an acknowledgement of the "limitations in her ability to use her hands due to deformities and cervical radiculopathy." (Tr. 20). Therefore, the Court finds that this issue constitutes harmless error.

Next, the Court turns to the ALJ's analysis regarding the limiting effects of Plaintiff's rheumatoid arthritis ("RA"), particularly as it relates to Plaintiff's upper extremity limitations and severe fatigue. In the decision, the ALJ recognizes "a history of rheumatoid arthritis, for which she was prescribed Methotrexate by her primary care physician." (Id.) However, the ALJ notes that the medical evidence does not indicate that Plaintiff treated with a rheumatologist or other specialist for this disorder and that there are no positive findings of rheumatoid factor on blood studies. (Tr. 20-21). Plaintiff contends that Dr. Chardoul has worked in rheumatology and that blood studies in many cases will not show a rheumatoid factor. (See Tr. 421).

First, the ALJ's observation that Plaintiff has not treated with a specialist in rheumatology is correct. Dr. Chardoul testified that he spent one year working in rheumatology. (Tr. 421). One year of training does not equate to being a specialist; Dr. Chardoul does not testify that he is board certified in rheumatology or that he completed a fellowship in rheumatology. Second, Plaintiff's argument that a blood study negative for rheumatoid factor does not necessarily mean that a patient does not have RA is well taken. Nevertheless, a reading of the ALJ's decision does not indicate a disavowal that Plaintiff suffers from RA but rather that it is not as limiting as Dr. Chardoul represented. Indeed, the ALJ included RA as a severe impairment and noted Dr. Ray's finding of synovial thickening in the right knee. (Tr. 15, 21).

15

Plaintiff characterizes the ALJ's discussion of RA as mere "lip service." However, substantial evidence supports the ALJ's conclusion that Plaintiff's RA does not cause limitations beyond those contained in the RFC. During examination, Dr. Ray formed an assessment of RA based on Heberden's nodes in Plaintiff's index and middle fingers bilaterally and "very slight synovial thickening" in the right index joint. (Tr. 308). Plaintiff's grip strength was 20 pounds in her left hand and 30 pounds in her right, and she was able to make a closed fist in both hands, pick up a coin using pinch grip, and open a jar. (Id.) Given Plaintiff's level of functioning, Dr. Ray believed she was able to perform occupational duties without restriction. (Tr. 309). The record was also evaluated by State Agency reviewing source Dr. Nguyen, who opined that Plaintiff was capable of performing light work with various postural limitations. (Tr. 132). These assessments of Plaintiff's physical condition and functional capacity vastly differ from Dr. Chardoul's opinion.

The issue thus becomes whether the ALJ was entitled to afford greater weight to the opinions of the State Agency and consultative medical sources than to treating source Dr. Chardoul's opinion. Generally, the opinion of a long-time treating physician is entitled to greater weight than the opinion of another examining physician. Bowie v. Harris, 679 F.2d 654, 656 (6th Cir. 1982). But "such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993). See also 20 C.F.R. § 416.927(c)(2) (A treating source opinion is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record). An ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (citation omitted). If the ALJ does not give a treating source's opinion controlling weight, he must give "good reasons" for not doing so. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). These reasons must be "supported by the

16

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id.

Considering the record as a whole, the Court agrees with the ALJ's conclusion that Dr. Chardoul's opinion was inconsistent with the bulk of the other medical evidence. As presented in the ALJ's decision and other portions of this opinion and order, the objective diagnostic studies demonstrate no more than mild to moderate degenerative disc disease and degenerative joint disease. Although Dr. Chardoul references portions of the MRI reports, he does not harmonize his opinion with the reports' descriptions of the findings as only mild to moderate in severity. Additionally, whereas Dr. Chardoul discusses limitations attributable to "bad" cervical spine degeneration (Tr. 424), reports from Dr. Reddy rendered in 2013 indicate that Plaintiff's history of cervical and mid back pain was resolved (Tr. 283). Treating physicians have recommended conservative treatment in the form of medication, injections, and physical therapy but have not recommended not surgical intervention. Several sources report Plaintiff's independence with most ADLs. The Court finds that these are good reasons for declining to afford Dr. Chardoul's opinion controlling weight. Accordingly, there are no grounds to remand the Commissioner's decision.

## V. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** the Commissioner's objections, **ADOPTS IN PART** the R&R, **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.


**IT IS SO ORDERED.**


Date:        September 28, 2016                    s/Marianne O. Battani
                                                   MARIANNE O. BATTANI
                                                   United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 28, 2016.

s/ Kay Doaks
Case Manager